Case number 22-1261 et al. American Medical Response of Connecticut, Inc. Petitioner v. National Labor Relations Board. Ms. Lammers for the petitioner, Mr. Loro for the respondent. Good morning, Your Honors. May it please the Court, Caitlin Cassetta Lammers arguing on behalf of American Medical Response of Connecticut, Inc., which I will refer to as AMR during my to grant its petition for review and deny the cross-application for enforcement of an order and decision issued by the National Labor Relations Board, which requires AMR to provide to the union, which represents some of its employees, certain information. I'd like to focus my argument today on two particular categories of information. The first is call volume data, which AMR asserts is confidential and proprietary information. And the second is response time data, which is a set of information for which the union has never been able to assert relevance and instead the board has improperly asserted its own explanation of relevance, which is not permitted pursuant to this Court's own ruling. Before you do that, can I ask you a question about, there's a lot of argument in your brief about the changes in the union's request, the three different iterations of it and how the board reacted to that. But even if they are of different scopes, have you argued anywhere that all three of them would not nonetheless be presumptively relevant because however broad they were seeking information about employees, are all three, whatever they cover, presumptively relevant? Yes, we are not asserting that any of the three requests are not relevant. The question was. Presumptively relevant. Yes. So the first request was overly broad and the parties discussed amendment of that request. In AMR's opinion, that request was then withdrawn and replaced with a new request for seniority list, which was responded to by AMR, which stated it didn't have such a seniority list. And the final iteration, all of which were identified as new requests by the union itself, was for employees impacted by brownouts, which AMR contends to this day is a request that is vague because of the subjective nature of the use of that term. You still agree that all three, just to be clear, are presumptively relevant? Yes. It's not a question of relevance. The question of relevance does not stand alone though. There are other reasons why an employer would not be obligated to respond to a request such as the request being overly broad or being vague and those are. What case from this court, or you can tell me another court, this court holds that you can, you need not respond at all to an overly broad request as long as it contains, it seeks presumptively relevant information. There is not a case that with that holding your honor. There are cases that say that an employer has an obligation to set forth the reasons for its objections to a relevant request for information and AMR contends that it did. It didn't challenge relevance. There are cases that say you need to provide at least a subset of clearly presumptively relevant information within an overly broad request. You can't just give them nothing. Yes. Understood. And so for the overly broad request, the parties had started to have a discussion by telephone about potentially how that could be narrowed. And then the union, in essence, issued a new request for different information, setting aside the first request. That's why the employer has urged this court to reject the board finding that all three of those requests built upon each other and instead examine each one individually. And if I may, I'd like to talk now about the confidential and propriety. So I'm interested in what do you think the board did with respect to confidentiality? Did it make Did it determine that you had forfeited the confidentiality argument by failing to propose accommodative bargaining, or did it actually make a finding about confidentiality? It's a little bit of both, your honor, in my opinion, because the board says at various points in time that there's not enough support for the assertion that the information is confidential and proprietary. And then at other points in time it says, well, you waived the ability to explain the exact nature until the hearing before the administrative law judge. I think in both regards, the National Labor Relations Court is incorrect. There's clearly board precedent and precedent from this court, which acknowledged the importance of accommodative bargaining and its role in balancing a union's right or need for information from a company with the company's legitimate concerns about confidentiality and the proprietary nature of information. And for the case law, who has the burden of initiating accommodative bargaining? The employer holds the burden to raise the confidentiality and I think leave room for the parties to engage in bargaining. Leave room. I don't know what that means. My reading of the cases was that the employer had to then engage. The employer had to engage in the accommodative bargaining. That wasn't a burden on the union. The employer has all the conditions they might be able to release information on it. Am I wrong about that? I don't think you're wrong about that, but I don't think that AMR at any point in time foreclosed the opportunity. Foreclosed is not the same thing as meeting the burden. That's my answer. Sure. And so I think that the AMR, these parties had regular communication, not only by way of the request for information and the responses that are in the record, but you can also see emails that regularly went back and forth between parties. What is the best thing you can point to in the record that says having asserted confidentiality, or they didn't even assert confidentiality, having asserted that the call response information was proprietary, having asserted that? What's the best thing you can point me to in the record that shows that the employer then met the rest of its burden and that was to engage in accommodative bargaining? What did the employer do? I believe that in each and every one of the responses to the request for information, the employer indicated its willingness to meet and discuss, or at least have a discussion about the responses that were provided. Read for me where they said, let's meet and discuss about how we can accommodate your request for this information. I think that I would, I don't think I can get you that exact paraphrasing, but what? You can have different words, but they have that same. Sure. I think that each of the responses, there is a line from Mr. Nup that says, please contact me if you wish to discuss. Okay. So that is them meeting their burden. I saw that. So that, in your view, is what requires them, that satisfies their burden of engaging in accommodative bargaining and saying, we assert that it's proprietary. Let me know if you want to talk about it. Yes. We assert that it's sufficient for accommodative bargaining. It can be the employer's duty of accommodative bargaining. I don't, I think that the, I think it can be extrapolated from the decision, but that's enough. But I also want to. In this case, do you think it allows us to extrapolate that all they have to say is, we assert it's proprietary, we're not handing it over, let me know if you want to talk. To eventually, to accommodative bargaining? No, to say that that satisfies the duty, not only to assert confidentiality, but also to initiate the accommodative discussion process. In order to privilege the response entirely. No, that, of course, won't establish privileges that have asserted it. But to preserve and to properly assert a claim of confidentiality. To place the onus back on the union to get back. I don't know if there is a case that's precisely like that. Is there anything remotely like that? I think that there are cases that exist before the board where an employer's encouragement or allowance that it would engage in discussion. With those encouragements or allowances, worded the same or closely similar to what we have here? I would not say that they're identical. I'm not asking identical if they're closely similar. Give me your best example of what an employer said that the board said that time. Well, I think ultimately, if you look at a case like Minnesota Mining, that's a case where the board said, that is enough. They said it's a trade secret in the correspondence. I believe they didn't explain any further until the hearing. And the board there said, that's the appropriate amount of explanation. Confidentiality. What about the dual aspect here that the board relied on, which is you also have to, you have to open the door, initiate the process of accommodative bargaining. I think in Minnesota Mining, it was relatively similar that in their response, they simply asserted it was a trade secret. The information that was being sought, which I think was like a chemical compound. But I think that there too, they didn't proactively engage until the hearing before the administrative law judge, wherein they provided more explanation. And then the board found that, okay, there is a legitimate confidentiality insert interest, which leads us to need to find for accommodative bargaining. What is the employer's duty in a situation like this, where they've asserted not just confidentiality over the call volume data, but also relevance? I mean, does the employer in that circumstance have an affirmative duty to propose accommodative bargaining sort of at the first moment it asserts confidentiality? Yes, I see my time has expired. I assume it's okay for me to answer your question. So I think that in the case where the employer is asserting as it is here, both that the information thought was not relevant. And then also that it was confidential and proprietary. You know, there's essentially a double burden. I think that the proving of the relevance of information when it's on bargaining unit, information is less rest with the union. And I don't on behalf of the employer attempt to shirk the burden that the employer holds to identify information as proprietary or confidential. However, it is the employer's position that it's entirely inappropriate to cart blanch order that the employer hand over what there seems to be no dispute is indeed confidential and proprietary information that was established at the hearing before the administrative law judge. And there's been no rebuttal or challenge to that by other counsel for the general counsel or the union. Which response letter described it as confidential? That was not in the response letters. They say they state proprietary. That's not the same thing as confidential. No, but during the hearing before the administrative law. They never asserted confidentiality until they got to the hearing. Yes, I think that would be accurate to state. And I think that that. I mean, are there different standards? Proprietary and confidential? There are. There are not. But there is. Wait, because the court court said that proprietary means there's all kinds  A trademark is proprietary, it's not confidential. Sure, there is a term of art that's frequently used in these cases. Proprietary and confidential. I think you're right, Your Honor. So that's the term of art is proprietary and confidential. But here, all they said was proprietary. Then that's worse for them because they must have known the term of art. And they left out confidential. They did not assert confidentiality at all until the actual hearing. Your Honor, I don't know if they would have known the term of art. That's not a term of art if the employers don't know. Okay, so then I. Because the board said proprietary, just asserting that it's proprietary information, which is very broad for any company and far broader than confidentiality. That's enough to alert the union that they're asserting confidentiality as well? I do not know of a case that holds that. Again, typically the board uses the parlance proprietary and confidential. Okay. Now, that being said, I would point you to the transcript in the case where Mr. Nup, the individual who responded on behalf of AMR to the request for information. He and Mr. Scheidinger both testified to the conversation between Mr. Nup and Mr. Scheidinger. Where Mr. Nup said, can we provide call volume data? And Mr. Scheidinger testified that he responded, no, I consider that to be confidential. So something might have gotten lost in translation. But certainly the company never abandoned its position that that information was confidential. My time is very well expired. I don't know. Well, that's okay. So once the employer finally makes a more specific response at the hearing to explain its reason for withholding information, is there a case in which, even Minnesota Mining, in which that untimely representation results in accommodative bargaining? Yes, I believe that is in Minnesota Mining. In Minnesota Mining. And there's a few others that are cited in our brief, as well as in Member Ring's dissent. And that actually, it is entirely logical. And within the purview of the board's remedial discretion, that accommodative bargaining would be ordered. The board has the authority to issue remedies, which would reset the parties to the position they would have been in had the unfair labor practice not been implemented. So there's talk of cases in which the board beways the interests, competing interests here. Is that only if there's accommodative bargaining and it reaches an impasse? I think that the way in which it would, are you referring to, for example, the court's statement that accommodative bargaining is helpful to the parties because it lets them flush out the balance and then the board also has a more complete record upon it? Well, that's what I'm saying. Is it only when there's been accommodative bargaining that, in an impasse, that the board actually waits, comes in and weighs interests? Or does it do that even without accommodative bargaining and say, well, we've heard your claims and we've heard the union's demands and so on. And we're going to order production because we believe, let's say, the union's need is greater. There are cases where the board orders production, but I can't think of a case where they did so on the basis of an argument that the need was greater. Most of the cases state, yes, the employer is now stating that this information is confidential and proprietary, but they made a blanket claim. For example, there is a case cited by the board where there are, I think, about seven requests and all the employer said in response to any of them is, this is confidential. So a blanket claim is no good at all, right? It's like no claim. Correct. It's not perfected by explanation. In this case itself, the order to produce, does that in any way limit the union's use of the information? No, and that's the problem for the employer. So there's no sort of automatic provisions or practice that follows from that order? No, the board could, with the board's order as it stands, the union could take the information and bring it to four competitors of AMR who would then bid on the same state, county, local government contract using the call volume data to undermine the bid submitted by AMR. That kind of- You argued at one point that that was punitive. Yes, and I believe this is the point I was going to make about the board's remedial authority. The board does not have the authority to issue any remedies which are punitive in nature. The board's remedial authority, though broad, is limited to its authority to sort of create a reset to where the parties would have been had there not been a dispute. And that would be accommodated bargaining. So in other words, if the employer had provided the information instead of violating the act, and so held, the counterfactual world is one in which then the employer would be told, your claim is not perfected. You've got to turn it over. All you can do between now and turning it over is engage in accommodative bargaining. I think that what it would have looked like had it proceeded before the board in that manner would have been you, the employer, have asserted the confidentiality in a way that we, the board, consider appropriate and therefore accommodative bargaining would be the next step which would need to take place. Is it considered appropriate? In my hypothetical, like the board says, it's not appropriate, it's not adequate. So your claim is not adequate. So you've got to turn something over. Right now what happened here is they say, we'll just turn it over. And the question is, should there have been some accommodative bargaining before turning it over, only about conditions that might be agreed to once the material has been given to the union? Yes, I mean, I suppose at the very least. I think that the better remedy for the board is the one acknowledged by this court in prior rulings it has issued wherein the parties engage fully in accommodative bargaining, not necessarily just with the condition about how the union could use the information because the parties might actually be able to make greater progress in either narrowing the request or providing information that is not particularly proprietary and confidential or in a way that assuages the concerns of the company. But yes, in the alternative, at the very least, what the board has done here is require an employer to turn over information that it has clearly articulated will create for the employer an issue of competition in the marketplace. And that extends beyond the board's obligation and indeed duty to balance the interests of the employer against the right of the union to information. So the employers can file a blanket fine and it's of no utility to it. I don't see how a union can be obligated in accommodative bargaining to pursue a narrow of the material which the board's forfeited. I mean, the employers forfeited that. So- If it were the case here that there was never an elucidation by the employer of the particular reasons for the marking of the information as proprietary and confidential, then yes, I would agree with you. It would be difficult for the union to narrow. What is there here? There's nothing. Here, there is the testimony from Bill Scheidinger, who is the regional manager, wherein he explained that in the transcript of the hearing before the administrative law judge that if this information is released publicly, it gives competitors the ability to look at, for example, how much, so call volume data, just to briefly explain it, the number of calls that are submitted and then the number that they ultimately respond to. If competitors can see that, and AMR is charging X thousand dollars a month, they can undercut the bid. Similarly- I didn't see anything in the testimony. This was at 1551 in the JA. Yes. About the response time, only about call volume. Okay. And so response time is in the transcript. It's in a different spot. I direct you to, there are definitions of response time that occur on pages 39 and 53 of the appendix. Wait a minute. Do you have a confidentiality as to those? No, no. The argument there, if you'll permit me to make it with the time I've taken thus far- Yeah, I just don't mean to interrupt you. I will get to that. You said 39 and 53? Yes, 39 and 53 are both- They're on 39. If you're on page 39 of the appendix, looking at page 195 of the transcript- Yes. There is an answer that begins on line 19. Our response times are from the time we received the call and dispatch until the time we're dispatched, until the time we get on scene, and then time to the hospital. So it's kind of like start time to finish time. That doesn't say anything about why that's confidential. No, the employer is not asserting confidentiality as to the response time. Okay, so it's really just the call volume. That's really all that's discussed at 51. That's precisely correct. So why did you begin your argument by saying you wanted to talk about call volume and response? I do want to talk about response times, but for a different reason, and that's a question of the board's abuse of its authority. I promise to let you do that. And if I forget, remind me. Can I just continue on this confidentiality issue? So has the board ever ordered accommodative bargaining without first finding that the information isn't fact confidential? I do not know of a case where they would have ordered accommodative bargaining without finding the confidentiality. The ALJ found as a matter of fact that confidentiality had not been established. There was some testimony at the hearing, but the ALJ discredited it, and the board adopted that factual finding. And so the record before us is that double factual finding here, that it isn't confidential. Where in your brief do you challenge that factual finding and argue to us that it was factually erroneous to conclude that this information was not confidential? I think we argue it in all the sections where we argue that it was indeed confidential. I did not see anywhere in there that they got the facts wrong. Here is why, or law, if there's a law that renders this stuff confidential. Well, I'm sure you've made this clear error argument that, and persuasive argument, that this is in fact something that's treated as confidential. Yes, I would believe that is discussed both in the discussion of the standard of review in our principal brief, and then I'm looking- The standard of review just says clear error. The standard of review also says what would constitute error and also sets forth the case law, which establishes what confidential information is as defined by the board. And so where is your argument in the brief that here's the facts, beyond the facts that were given? I mean, I don't know what you're going to do because what facts did they ignore in finding that it wasn't confidential? I think the testimony from Scheidinger is the fact that the administrative law judge and the board both sort of lost the explanation of the confidentiality. Tell me what's substantial. I mean, what I understood was he said our competitors would like it. I think it's a little bit more explanatory than that if you look at the testimony. It certainly is our competitors would like it. I mean, competitors like to know wage information, but that's not confidential under labor law. Competitors like to know all kinds of information that you have to disclose to unions. What hours are people working? How many employees do you have? How much do you pay them, right? You have to disclose that. So the fact that competitors would like it or could use it does not make something confidential in labor law, right? So tell me where the testimony is that there's something more than competitors would like this information. Well, I think I would have to point you necessarily to the testimony from Mr. Scheidinger, which is the appendix, and it's going to be on appendix 50 to 51. Okay, and what does he say there that the board or the ALJ, I mean, the board agreed with the ALJ, but the ALJ missed. It shows that he was, the ALJ, sorry, the ALJ, he or she committed clear error in finding this was not confidential information, which I'm on page 50, start with 50, so. So page 50, and if you're looking at page 302, I concede that this is about competitors liking the information. I would argue that it's more detailed than simply competitors like the information, but it has an actual. Certain employees are able to see that information. Yes, I would, I don't want to make presumptions that are not supported by the record, but I'm thinking that Mr. Scheidinger is referring to management. And I think that ALJ and his decision really focused more on the concept that there wasn't enough of an explanation given in response to the information request, rather than any sort of focus on the testimony from the hearing, which I think he just described. This goes back to a question I asked you earlier in this argument, was whether, do you concede that the ALJ made factual findings about confidentiality or proprietary information, or did the ALJ rest on some idea of waiver or lack of sufficient explanation? Because I think that actually makes a big difference in the standard of review and how we view this. Yes, and I stand by my answer that I think that in the analysis of the question of the confidentiality and proprietary nature, there is sort of a mix, because the first thing that is found by the ALJ, which is later adopted by the board, is that the written responses, which raise the proprietary nature of the information are insufficient as a, I suppose, matter of fact in law. And then the second argument that's made by the ALJ that's adopted by the board is that the confidentiality assertion that came at the hearing before the administrative law judge essentially came too late for the employer to claim that accommodative bargaining. Coming too late is different from a finding that the information is, in fact, not proprietary or confidential. Right, and that's why, in response to Judge Millett's question, I was going to point out, I think that even though the judge made some amount of finding regarding the nature of the information, it was mostly just to say it was too late, rather than to say this information is certainly not confidential. It was a little too little and a little too late to sort of paraphrase. Even if this concludes, it gives the, he says, here's what, first time at trial, Scheidinger claimed the call volume data was sort of proprietary because it disclosed it could be used by competitors against respondents. So restating exactly your point, even if this includes the explanation was sufficient, and I do not find that it is, we found that not sufficient to establish confidentiality. It's right there in the opinion. And at the same time, on your point on confidentiality, when you look at this testimony, he says, well, some employees have it, we share it with customers, we have to disclose it sometimes to government agencies. That's a lot more than that to establish confidentiality. Say we give it to some people here, we give it to customers who can give it to competitors. We give it to government agencies. Is it a matter of public record? Did he talk about that? This is not something they hold confidential. There was a discussion, I think, about the information given to public agencies, but I don't think it's conclusive in nature, I think, Mr. Scheidinger. No, they give it to customers. Some employees have it. Yes, I don't know. You can understand why the court thought it might not be confidential. Am I mistaken? I've heard giving it to customers is only their own data. Give the customer on request its own data. Right, and I don't know, the record is not clear as to the specifics of whether there are, in fact, limitations on the customer's use or dissemination of that data. Well, that would be... I don't think that's why there would be, since it's their own data. They could have collected it themselves. It's easier to get it from them. I don't know. Actually, I don't know. I'm not positive, and I don't think the record reveals whether it's AMR's data. The way the contracts work for a company like AMR is they are contracted by, let's say, the city of New Haven, Connecticut, to provide emergency medical transport, and so AMR would be the keeper of the data about doing that, but they would be doing it pursuant to a contract with the city. Those contracts are frequently voluminous, and they have all kinds of provisions, including provisions for the information, like call volume data, but they could also have corresponding limitations. For example... Could not, we don't know, because there isn't testimony here that, in fact, the company treated this as confidential and held it close. There are required restrictions. I mean, if the client is a public agency, a safety, health and safety agency, and they want this information, is there any evidence in the record that says the government itself keeps this confidential? There is, at the very least, the evidence that AMR does all that it can  even when responding to inquiries from the government, such as responding to bids to provide services. Where is that? They say we do absolute... Well, the fact that we do most of what we can may not render it confidential. Where does it say we do absolutely everything we can to keep it confidential? I think it says 51. 51. I don't know if it's absolutely everything, but I think it's significant that Mr. Scheidinger gave testimony that the company is willing to exchange the right to negotiate over the increases in cost to the contract in order to protect call volume data by completing a short-form application each time they bid on services. Line 19 on 303, other than just providing value to our customers, their call volume specifically, we don't release call volumes to any other customer or any other employer unless they're mandated to employ an order of state. Yeah. It's the customer's own data. Yeah, I think it's accurately described as the customer's own. So at 42 in your brief, you argued the board and the ALJ implied that in order to gain the protection afforded by the board's precedent, the company needed to explain precisely how its own information could be used against it. This is too high a standard and not one required by the board's precedent. See, for example, Detroit newspaper agency. So I think that's all you've said about why, to the effect that the board and the ALJ erred in not treating what was given as sufficiently to establish confidentiality. It's held to too high a standard of precision. Yes, I think that that would be accurate to the extent, aside from the passing reference that the ALJ made, I do feel that if you look at the decision issued by the ALJ and the board, they are focused primarily in saying a paraphrase, I'm paraphrasing, too little, too late. But if the board had actually stopped to examine the confidentiality information, the testimony that was adduced at the hearing and still said that, you know, you should have said that back when you originally provided it. The argument the company is making is that that sets too high a standard. So your position, it was not too low, even if it was too late. Not too little and not too late because there are other cases wherein the board has found that provision of more detailed explanation at hearing before the administrative law judge. Basically Minnesota mining. Yes, and I think there are at least one or two others. Minnesota mining is the most factually similar to the case at bar in my opinion. Does any state or municipal law require any disclosure of call volume data? And at least for Medicaid, I guess or New Haven. Again, there was testimony about the state law disclosures, but I think the record is unclear at best as to whether it requires the release of any call volume data. Mr. Scheidinger was asked about that on. He referenced that we don't release unless we're required by state law, but he didn't then establish that there's no requirement. Later, later in his testimony upon cross examination by Mr. McGrath Council for the General Council, there's some discussion about are you familiar with the state laws and what do they require you to provide? And Mr. Scheidinger says I don't have them in front of me. I don't know exactly what it is. So the testimony was that he didn't know if he was releasing this stuff at our state law. I think the testimony was he can't think of any time where he does release call volume data. And when asked about the state laws, he had no recollection and there was no testimony offered that it was released as part of that. So I said no, we've never released and I'm not aware of any state law that requires me to do so. I would point you to 50 to 51 for his statement that no, we never release this unless it's to our own customers. And then later, I would have to pull the site for you. I'm not sure I have it readily available where he's being questioned by Mr. McGrath on cross-examination. We'll find it then. Okay. So, is there more on this? Or should we go on to your response time? Response time data. So with regard to response time data, a brief definition first. Response time data is, in essence, what it sounds like. The amount of time that it takes for an AMR ambulance to respond to a call requesting transport. Response time data was requested by the union in multiple of its requests for information. The problem is that the union has never been able to set forth the relevance of the response time data. And instead, relevance was provided first by the administrative law judge and his decision adopted by the board, and then also by the board itself in their opinion. This is problematic because this court has recognized that the board is beholden to analyze relevance on the grounds that are asserted by the party requesting the information rather than some explanation or understanding of relevance that the board or the judge were able to come to on their own. And so here, the union did not provide the relevance of the information during the underlying correspondence between the parties. At the hearing, the union asserted that the relevance was to determine the location of Bridgeport Cruise, which is non-bargaining unit information. And the information requested, simply the response times, it's still not clear to me after many hours with this case how response time data would be relevant to either the union's concerns about the browning out of shifts or the union's concerns about subcontracting. Are you able to tell me as a layperson what is in response time data? What is in there? Sure. If there was a call, it was three minutes, or is it who answered? You know, which ambulance answered? There are two points in which response time data is defined by the parties in the transcript. Page 39 of the appendix and page 53 of the appendix. Are they consistent? Basically. And both of them will illustrate to you that it's time. It's start time, end time, maybe some times en route. So it'll be the time the call is dispatched, the time en route, the time arrived at the scene. But there's no indication on questioning on either 39 or 53 that anything besides the amount of time is included. Is this the information that the folks on the ambulance are themselves supposed to sort of record? Yes, and I think it happens. It doesn't reveal who it comes in, but that doesn't include who is ambulance X or Y? There is no record evidence as to other than these definitions of what a risk, what response time data would be, which are just about times of there being other evidence. So you wouldn't know if there are other information. If this is not the case, but if you had an ambulance through that was slow. They are just always slow. And so you're gonna get a few times a day. Wow, it took these people forever to get from here to here to the hospital, right? Employers never gonna be able to tie that response data. The employer may very well have the means to tie that data to an ambulance, but the response time data itself as defined by both parties doesn't tie that have to have some other information that they interpolated. One would presume, and I think this is precisely why if you look at the ALJ's decision, the administrative law judge's decision and the board's decision, they actually contradict each other when they explain improperly the relevance. The ALJ says, well, if you're seeing fast response times, it must mean New Haven crews are taking the calls. Whereas member ring and the board's decision says, well, if you're seeing fast response times, it must mean that there are ambulances from Bridgeport picking up the calls. And this is precisely issue. First of all, the union has never asserted either of those rationales for relevance. And second of all, those rationales are just not supported by the factual record because response time doesn't include all this other information that the board and the administrative law judge presume that it does. In fact, the administrative law judge says presumably it would show us this, meaning that there was no evidence in the record or any evidence presented by the union that the data would be relevant. And presumably has its folks are the ones that are driving these ambulances and they know when they work. And if they don't have, they can get a quick shift data that some of the stuff they were seeking. So they can put two and two together as well. If they see the fast response time on a day when they were, I'm just hypothesizing a lot of brownouts, they can put two and two together. And the union did say this is, we want this as part of our effort to figure out if you are staffing Bridgeport, employing Bridgeport ambulances for calls after Browning out in New Haven. That was, that was their concern all along. They kept repeating that that was sort of the explanation they gave for this. Yeah. I actually don't even think they gave that explanation. Mr. Smith, Nate Smith, the representative of the union who wrote the request was asked on cross examination. Why did you ask for the response time data? And he states to see the location of Bridgeport employees, which doesn't, it's hard to divine how, how that could be determined from the response time data. It doesn't follow. I thought that the exchanges that were just, if you could just say there was ongoing exchanges between everybody. Sure. I think they were clear again and again and again and again what their concern was. And my recollection, you tell me if I'm wrong, is that they said they want this information, all response time to know as part of their inquiry into whether you are just staffing your calls or canceling us out and using non-union employees for their payment calls. They raised the request for response time data in a request for information, which generally said it was related to the investigation and then later the grievance into subcontracting. However, it is still the case that it is unclear as a matter of relevance how raw response time data would allow the union to divine anything about whether subcontracting is occurring or not. And the union never set forth the manner in which it thought the two could be related. That explanation was provided only by the judge and the board. And even they contradict each other on how it could be useful because the record is just so devoid of a full examination of the relevance of that information. At least when it pertains to the New Haven employees, presumptively relevant to the clocking their work time. Well, it might be presumptively relevant as to New Haven employees, but that is not the reason that the union articulated for wanting the data. But if it's presumptively relevant, they don't even have to give everything. I don't think it was presumptively relevant. I thought you just said it might be presumptively relevant as to the New Haven employees. If they had asked, perhaps if they had made the request specific to New Haven employees instead of directed at the entity, which is the operational organization in New Haven, that maybe there might be an argument it's presumptively relevant. But that's not how the request is phrased. They're requesting abroad. But then employers still should have given at least the New Haven response data. I don't think in this case, it might be overbroad, but I think first the question is the relevance examination has to happen first, even with regard... It's presumptively relevant. Again, yes, but I don't know how the response times for New Haven only would be relevant to the question of the subcontracting issue. It's only in combination with operationally the organization as a whole. It's presumptively relevant. They don't have to give an explanation. They may figure out they're going to put this jigsaw puzzle together. I don't think it's sufficient for an employer to say that we don't understand how something is presumptively relevant. It's relevant. I don't know how it can be presumptively relevant because it's not obviously tied to the wages, hours, and working conditions of the unit employees. If we put away the presumption, I can readily imagine saying, well, look, if the response times are getting long in New Haven, that's the occasion for bringing in non-unit employees. True. Then I can look at, well, when, you know, try to piece together when did they have a greater need because of the long response times and what evidence is there that they actually then took non-unit people in. And I think that all of this is a legitimate discussion of potential rationales. But importantly, it is not what the board determined. It's not what the judge determined. And it's not what the union asserted at any point in time in the underlying record. So even if it were true, that is not the approach that was taken here. Instead, the judge and the board said, well, it's apparent that it would be relevant because presumably, literally using the word presumably, it would show that. So I think that it remains the case that the employer's position is that the union never established the relevance of those requests. It had the burden to do so. It did not do so. And the judge and the board erred when they improperly substituted their own rationale. Am I correct in thinking that the dissent in this case did not dissent as to response time, but only as to fallback? You are correct. Member Ring is actually the member of the board who stated in the board's opinion that he did not rely on a theory of readily apparent relevance, but instead said, I can essentially extrapolate if I look at the other things that were requested, that this data might show that response times are faster because Bridgeport employees are responding, which is the exact opposite of what Administrative Law Judge Gollin said, which was if response times are low, it means New Haven employees are responding. So I guess my point is that the factual record doesn't support either of those conclusions, and none of them were asserted by the union. Ms. Congress, speak a little bit about waiver. I found the briefing a little confusing as to what precisely AMR's waiver argument is. So maybe you can clarify. With regard to Article 23.03 of the bargaining agreement. So I would describe that to this court as a threshold. Similar to if you're determining whether parties have a right to bring their case in federal court versus whether they are obligated by a contract to arbitrate it. The board will tell you that it won't delve into interpretation of the party's collective bargaining agreement to say whether the union had waived its right to bargain with the employer during the COVID-19 pandemic. Our position on behalf of the employer is simply that by waiving its right in the event of a disaster like the COVID-19 pandemic to have any involvement in things like shifts or scheduling, the union has essentially waived its right to request information associated with those waived subjects. And that's like the... So is your argument that 23.03 is an indirect waiver of information rights? Like it waives certain subjects or certain topics and information rights are sort of incidental to that? Or is your argument that 23.03 directly waives information rights? I think it is the position. It is the position of the employer that it's a direct waiver because in section 23.03, which is on page 145 of the appendix, it states the employer shall be relieved of any and all obligations here under relating to scheduled paid time off, posting shift changes and transfers in the event of or during the term of a disaster or catastrophe, such as fire, flood, explosion, power failure, earthquake, or other acts outside the control of the employer and causing disruption to the employer's normal operations. That use of any and all obligation is a direct waiver. It's not indirect and... Relating to? Yes, any and all obligations relating to. And so a request for information relating to shift and scheduling is an obligation of the employer relating to shifts and scheduling. That's our argument on waiver. We are not asking this court or the board to enter into the merits. It is like, as I explained before, I would term it as a threshold inquiry that's necessary based on the language of the contract on its face, which is something the board does all the time. And so then the remedy would be to remand to the board beside that issue? I think that this court would have the authority to vacate the board's order and find that there is a waiver. That is something that the board, that this court has done in other circumstances and in other cases that you could vacate. You could also remand it to the board and ask the board to address in the first instance that threshold argument pertaining to the contract language. The board didn't address it? The board simply said that it will not inquire into the merits of a contractual dispute in the parties. And our position is it's not an inquiry into the merits of the contractual dispute. It's a question, it's a gatekeeping question, a threshold question. And the board did not decide the issue of waiver? They said to do so would be to inquire into the merits of the party's contract. I want to make sure I'm clear because I kept getting confused as I was thinking about this. With that language, any and all obligations relating to, and then it lists the different categories. And your argument is that that is a direct and specific waiver of the information right. There's two ways to do it. One is that just, that means information right. Whatever else any and all relating to includes the information right that goes with those things. Or the second argument would be that, look, this 2003 waiver, should we call it, temporary waiver, takes these shift changes off the table. Sort of like, you know, normally information rights go with, you have a substantive right to bargain over that. But this took those off the table. And so this is not as a matter of contract text, but sort of as the, it's the wrong word, but sort of the common law of the rationale for the information right when a substantive obligation to bargain goes away. Like it suddenly becomes like an exclusively employer right. Then the information right goes with it. But you're saying the first is textually waived as to information. You're not saying the second or you're sort of saying. I am also saying the second, which I think is borne out by the board's own case law and the ADT decision, wherein the board recognized a contractual waiver of the union of right to bargain over a subject. And therefore said, since you leave the right to bargain over that subject, you've also correspondingly waived the right to request information about it. It's, it is. That's like the second time. Yes, I would say the other. Yes, the first. Yes. I would call the first one the threshold argument. Exactly. And I'd call the second one, the argument based on, you know, the board's past precedent, which is if you waive it in a contract, then you can't request information about it. Does, have any of the other board cases that you're aware of involved? Some of those things are, just as a matter of the CBA, something that's only at the employer discretion. It's not like the one that I saw. Then I think that in First Energy were things that were just never in the union's wheelhouse. But this is a temporary one. Are there any cases where they've had similar, maybe in the post, maybe there were a lot of this post-pandemic and they've pulled us how we think about that? Because one can imagine a union saying, you're right, I couldn't have bargained about it from 2020 to 2022 or 21, whatever it was. I still need to know what happened then because now it's back in my wheelhouse, union wheelhouse, and I need to know about what happened then so I can bargain better for disaster provisions going forward. Have there been any that you're aware of like that? I'm not aware of any like that. Typically the waiver is one that, you know, they're waiving a right about a particular subject and I guess I would argue that the union's willingness to waive in disaster circumstances is not a temporary, but in fact, a permanent waiver. They're essentially saying whenever, I don't know, that's the question. Yeah, that would be... The board hasn't spoken on whether it's not permanent because it's only during the time of disaster. Right. I think we can agree with that. So the question is whether that just walls that period of, I think it's what you're saying, that period of time. It's walled up. Yeah, that would be my position. But a union could say, oh no, we couldn't have asked between 2020 and 2022, but now it's 23 or 24 and we want to ask so we're going to renegotiate the disaster provisions. Certainly, and I think that just speaks to the potential propriety of remand because that is an issue that... That makes board and remand more important, I think. Yes, I mean, I do still think it's within this court's discretion if they were to themselves want to vacate the order and issue a decision. But I also think that the board is... Remand would be appropriate. The board would be entitled to weigh in on that, particularly because their decision simply just did not broach the subject matter of the argument discussion we're having today. Any other questions? I will rest on my boots for what it is. I know you had one more quick point you wanted to make, but if not, then... No, thank you. Thank you very much for helping us. Good morning, Your Honor. May it please the court, I am Greg Laurel for the National Labor Relations. Asking the court to enforce the board's order is supported by substantial evidence on the record and as the submitted settled law. Of course, I'm happy to answer any questions the court may have, but if I may start with the issue we just discussed, the disaster provision and waiver. It is settled law that this court and the board do not count on the merits of the party meeting contract interpretation or the merits of the grievance in assessing relevance under the liberal discovery. We cite the college-based report which cited the Supreme Court's decision in action. Mr. Laurel, doesn't the board decide threshold waiver questions? Well, the board can decide threshold waiver questions, but in the context of this case under the liberal discovery standard, the question is at most, is the information of potential aid to the union and actual proof of actual violations of the contract are not necessary? At most, you have to have a possible or plausible. There's an argument here. This isn't about... Oh, no, I was just going to say, I mean, I don't think that's their argument. Their argument here is that 23.03 is a direct waiver, so it's not about the connection between the contract and the relevance. They're saying that they simply just don't have a right to this information, and those seem to be under the board's precedence questions that the board does answer in the first instance. Well, their argument is very unclear there because what the union is trying to do here, and I'm trying to put this in the context of the report, is in part determine whether there was a violation of the contract through subcontracts. The increased use that the union could observe of non-unit employees performance at work. My opponent's view appears to be that a provision that says nothing about subcontracting waives any union challenge in subcontracting that it silently negates another contractual provision that specifically seeks to contract, and that although the provision they rely on doesn't mention grievances, it negates another contractual provision that specifically speaks to grievances and the duty to provide a payment. So I would just submit, and I hold, the board and courts have said typically do not count on the merits of receiving a grievance in determining the provisions in the settled information, but also my opponent, contracts clear on its face, if the argument is clear on its face, just doesn't bear out. One would have to address the conflict of provision. There is a subcontracting, there is a provision about providing a subcontracting. And the union, I mean, first of all, sometimes when the board has said that in the past, because the dispute is about, you know, they need the information to even dispute the contractual questions. But this is a different, this is a different type of contract provision that sort of says, it says during the time of this disaster, there's no dispute that it was appropriately invoked or that it covers the time period at issue here. Those are not factual disputes. But if we're in this situation and this provision is invoked, things change dramatically. Shift changes. Hours working, who's working, are wholly within the employer's promise. They are off limits. They are no longer something over which the union has the right to bargain during the time of crisis. So if, you know, two things. One, if that's true, right, then the board can't simply say, or their other reading is just as a matter of plain text, even though the board and the information right is waived by the any and all relating to, because the information right always relates to the bargaining. So they're saying there's this, things are walled off. They're no longer even in your wheelhouse union. And so the information right, you don't have a right to information about things that aren't in your wheelhouse. And for the board to say, we're not going to get into the merit, they are resolving the merit in effect, because they say, provide the information. Well, once the information is provided, you can't get it back. So they have, for all intents and purposes, answered that question by their order without doing any analysis, because they've ordered them to provide the information that they say, when I read the contract, it says I don't have to provide the information. This is not a fight about getting information to deal with some other substantive aspect of a collective bargaining agreement. This is an argument that I don't have to provide, I don't have to provide information. The board can't say, we're not going to address that, it's just an information request. That defeats the whole contract. And they've lost, they lose, right? They have to turn it over. They're not going to litigate these merits later, because the information is already out. Well, a couple of things. I appreciate your point, but this is not a law the board just made up. I mean, this court quoted Supreme Court in Acme saying that the liberal discovery here is irrelevant. It says nothing about the merits of the agreement. And I understand your point, but I just don't think it's so clear-cut. Well, the board itself has not been consistent. Because in ADT, and in First Energy, in both situations, they said these topics are ones under the contract that are given to the employer, not the union. And so the information right falls with it. So the board itself, it's not like, the board itself is inconsistent. And that's not a great thing. Because the issue of an interlateral change was charged, the board found through the contract, the unions waived a right to bargain over that issue. And now you're seeking information to bargain over that. It's a direct point. But in Stericycle and Emory, the board also says that doesn't bar receiving information for some other representative purpose, like getting a grievance. Where did the board in this decision here grapple with the alternative precedent that says the opposite, that we don't order it, that information right falls, goes away, if you don't have a right to bargain over something. We've got cases that say that. I didn't see them grappling with that here. At page 13, the judge notes that this is unlikely to be a clear and unmistakable waiver of the right to sink. Unlikely to be? Well, the board said. Where did the board say? I'm sorry, what page? I'm sorry. This is page 13 of the decision. It's in the appendix of page 278. The judge finds respondent failed to show the union to track clear, otherwise clearly and unmistakably waive the right to the relevant information at issue, which is a reasonable finding given the contractual language that we have conflicting provision. And I would go back to what my opponent said. They want to say this is a threshold issue. We're not even really asking the court to interpret the contract, but you would have to, to assess what happens to the explicit contract. That's in the agreement, too. And the union saying think that's violated. We have a case to think about. We want information relevant to that investigation. The judge noted after provision that says contractually, you have to provide him with relevant agreement. Can you tell me where again? I'm sorry, you said 278. I believe it's 278. And it's a routine of the division of the decision. It's in the left column, fairly top. And this is where the judge is making that important point that you have a provision that says you union have the right to file briefings to get information supportive. And also there's a subcontracting provision and the union has a right to enforce it. Well, I'm asking you all this doesn't tell me that there's more inconsistency in board decisions that wasn't dealt with here, right? All the ALJ says, here's a case. Where they said, you might still have to provide the information, even if they don't have to negotiate over it. So we've got ADT and First Energy that say they don't have to negotiate over it. And the first, then the information right falls with it. So I'll ask again, where have they grappled with these contradictions in their precedent? Well, I mean, the judge noted this isn't a case like ADT. It's more like Sarasite Alert. And where does he say, where does he distinguish ADT? Chief, I'm sorry. The board. No, where does the ALJ? At the top of the same page. Where ADT is not a case where the union is seeking the information for another legitimate representation of purpose. And that's the point. It's one thing to say that a contract waives the right to bargain. So you can't get information just for the purpose of bargaining over it. I don't guess I don't, maybe I don't understand that distinction. For another legitimate and pursuing a grievance. They can't pursue a grievance over something because it was off the table. And how do they need the information? Well, the provision, the disaster provision doesn't say anything about waiving grievances. And in addition. Well, the contract itself does though. The contract doesn't say that. The contract mentioned certain scheduling issues about paid time off and leave. It's quite a leap from we control paid time off saying we can replace you with not your employee withstanding an express subcontract. And also my opponents basically assuming the union has to take their word for it that they're just applying to that disaster. Union can ask the question, are you taking these actions to increase subcontracting? Apart from the merits of whether the waiver is valid though, there are a number of board cases that say that the board has to decide whether the employees have waived their rights to information. Here the board just doesn't make that decision because it says it's not deciding the merits. I mean, there's a number of cases. There's like Boston mutual life insurance, quality building contractors. I mean, these aren't cases that the board sites here, but they stand for the proposition that when there is a waiver argument, the board will decide that. So they haven't decided that here. So, I mean, isn't that a problem? The board not following its own precedent? Well, I mean, apart from the merits of whether there has been a waiver, you know, under the CDA. I see your point. I think the board is following precedent saying ADT is a different case. Questioning the information apart from say bargaining over an issue for bargaining. And for example, we don't know if you're really limited. It looks like you're cutting minute hours right before there's spike in volume creating. That's again about the merits. It's not about deciding the waiver question itself. Which the board's precedent say that it will do when there's an argument that there's been a waiver of information, right? So I understand, I mean, what the board said and discussed this is the site, its precedent, and I agree with the site, the precedent of the board. So then does the board lose because they have failed to distinguish their earlier precedents? They just sort of ignored them. Well, but not these other cases that say that the board has to determine the merits of whether there's been a waiver. So that in itself would normally be unreasonable. Agency action. And I'm not sure how clearly my opponent made that argument in their opening brief. I think their point was more. An argument, which I think is wrong. Are you saying that they forfeited that argument? I'm saying that's up to the court to look. I'm just saying I don't know. You're not arguing that they forfeited? We didn't. And you're not now arguing? I'm not sure. I don't remember them making a specific argument. I could be wrong in black. But the board took so long. I'm guessing the same. Including some of the support. I understand. But I just said the board has two competing lines of cases. There are these cases, of course, that they don't pass on the merits of contractual provisions. But there are other cases, a number of them that say they do pass on the merits of whether there's been a waiver of information. In certain circumstances where the information. The board doesn't even address those cases. I believe the board did address. Making the point that we recognize AD&T recognized AD&T is a case where we waive the right to bargain over issue X. Now you're requesting information to bargain over issue X. That's a match, but this case is different. In this case, the union is seeking grievances. It doesn't say waiver. So your distinguish isn't substantive. It's that it's different for bargaining and grievances? Well, I'm just I'm saying just because you waive one issue doesn't mean you waive the right. But the CBA separately provides as to information request for grievances, that it's only as to non-confidential, non-privileged information. And I think their point would be 2303 creates the privileges and privileges that information disclosure, so even specifically as to grievance. It doesn't, but it doesn't say anything. My point is that it says bargaining grievances. I'm talking about I'm not talking about 2303. I'm talking about 1608. Sorry, but that's the conclusion. That is the right to have information. To investigate non-privileged, non-confidential, and if you go to the contract itself on the next page, or maybe not the next page, but 2303 creates a privilege against disclosing information, then your distinction between bargaining and grievances is going to hold up. I mean, maybe not. This is for the board to figure out how this contract operates. Well, just something else I would point out. AMR, like the union, just acquiesced to this idea that the Disaster Provision would necessarily be the right to bring grievances, but certainly that's not true. It starts with building subcontracts and cutting them out. Clearly not. Excuse me, Mr. Lord, would you either speak up or closer to the mics? Of course, is this better, Your Honor? Thank you. Mr. Lord, so let me ask you a hypothetical. So if before the events here, AMR and the union had added a short provision to the collective bargaining agreement that something like the union waived all rights to information requests during the pendency of COVID, and then the employer raised that provision as an explicit waiver, wouldn't the board have to decide that question under its precedence, the cases that I've already mentioned? I mean, if there was a provision that says, you know, waive all rights to information during COVID, wouldn't the board have to decide whether that applies? I think it would. So how is this case different? Because here, AMR is saying 23.03 is a waiver of information rights. They're saying it's a waiver as to certain scheduling. No, they're saying it's a waiver as to the information rights. They all make some arguments in the relevance area, but they're also saying, the way at least I read their brief and the way Ms. Lammers mentioned that argument, that it is a waiver of information rights. So if you admit that, like in my hypothetical, the board would need to review that, then I'm not sure how this is distinguishable. Because I just feel like your hypothetical is different because it is an explicit waiver of the right to request it. But they've argued that 23.03 is an explicit waiver. I mean, the board could conclude that it is not, but under their precedence, under the board's precedence, it seems that at least it has to decide that question at the threshold. If it's such a threshold issue, then we have to. We have the judge's findings that I discussed. Explains their, but if the court feels that's a threshold issue, the board didn't press, I can't say beyond that one site. If there's a finding, how the judge is finding on that, if the court wants more. That wasn't interpreting the contract. That was saying, this isn't like ADT because this involves grievance. Right. ADT involves a grievance too. Well, ADT involves information. Information is a bargain. And a grievance. Karen, I'm acknowledging if the court feels the agency didn't press the threshold issue, I can't just find a discussion of the findings that were made on it. It is a possibility. What I can't do, if you don't feel the findings are there, just give them to you. But the board explains, and again, I'm not going to go into this, but there's a law on it, that it would not be an actual interpretation. And I would leave you on that point with the thought that the board's unions interpretation of the contract don't have to show an actual violation. But if your honor has any questions about the other issues, I know the issue of confidentiality came up, although it was discussed and we didn't criticize for their terms, they didn't actually raise a confidentiality issue here. The board has a timely search, substantiate, and make an offer to accommodate your interest with the attempt to set the rules of motion and accommodate bargaining. The board explained, and I think this is a policy determination, that allows AMR to do what they did here, which is to congressionalize proprietary and then assert confidentiality. They're going to answer that later. Again, it wasn't a matter of policy, it was encouraged by the board. It wouldn't really be for accommodating bargaining. It's an understatement. So this is a hypothetical. Assume they had said it's confidential, a proprietary and confidential because it is sensitive to commercial information. You get a response like that from an employer. And put aside the accommodative bargaining part of it, just for purposes. But is that considered a sufficient assertion of confidentiality and non-competitory? Can you repeat the language? That it is proprietary and confidential because it is sensitive to commercial information. Well, frankly, acknowledging we know those aren't the facts here, it's a hypothetical here. They just said... I'm making crystal clear this is a hypothetical. Everyone knows that is not what their response was. That's your question. It still sounds conclusory. And what the board would have to look at is... So how much proving is the employer supposed to do as to the union? Are they supposed to give them a little brief on confidentiality law? Or how much... I think the board explains the policy of accommodative bargaining here, which is to give the union enough information so they can meaningfully understand the claim and bargain over possible accommodations. So if the information at 50 to 51 in GA had been provided in response to the union's first request, would that have adequately discharged the employer's obligation? The judge said no. I want to be candid that the board didn't separately address that issue. They didn't disavow the judge's finding that it was a separate issue. So if... Tell me again louder, please. Of course. The judge, and I believe he discussed this this morning, noted that that explanation at the hearing was pretty conclusory, saying, again, this is page 13 of the decision, 278 of the appendix. Even if this conclusory explanation was sufficient, and I do not find it was, AMR never proposed or offered to bargain over an accommodation. But I acknowledge the board's main point here, and it's supported by precedent, is that the claim was waived by the employer failing to timely assert it, substantiate it, and propose an accommodation before the hearing. And that's consistent with settled law, and it's a reasonable policy. If the information was provided at the outset, it might not have been pardon me, entirely sufficient, but surely it would have given the union enough to ask a follow-up question. It may have, and we'll never know, because that didn't happen. And something I want to point out, I didn't hear AMR at any point explain why they couldn't have done this earlier. If they know, whatever they call it, their proprietary claim, their confidentiality claim, whatever they finally claim at the hearing, they could have explained that to the union earlier. And if they had, we might not be, but that's not an unreasonable burden. If they know their claim is hearing, they should know it at the time as to why they can or cannot respond to a request, as the court noted in U.S. testing, it was kind of a burden on the employer. I'm sorry, I'm having trouble hearing that too. Yes, in U.S. Court noted where? In U.S. testing, this court noted, the employer is in the best position to decide how it can respond to an information request. And there's no reason they can't do that at the time of the request. Their explanation should be judged at the time of the request, not the hearing, because as the board explained, it would be untenable as a matter of policy to let an employer make a bare assertion here, as your Honor noted, just of it being proprietary, which is much broader than confidential or crazy. And then only substantiate at the hearing, and then start bargaining over accommodation where it wants. That would just encourage delay. Union at the time is not in a position to be fully understand the position and engage in bargaining. So the board made a reasonable call. And what do you do with Minnesota mining? Well, Minnesota mining doesn't say anything. First of all, nothing in Minnesota mining says, go ahead and make the bare assertion and substantiate it later. But also the facts in Minnesota, as was discussed this morning, just saying proprietary indicates ownership is very broad. It's broader than trade secret. What was said in Minnesota mining and there were some findings that the union did say a little more. I mean, if the employer said a little more to instantiate its plan saying, you know, you've got. Don't want to give it out. That's a little more specific. Proprietary and in the context, which is a highly technical process, the union may understand better than it could have in this case. What the employer was getting at, I think this corporate oil. And in forcing Minnesota, I noted that at a meeting prior to the hearing. The employer's position on Tracy Crystal, and it might not have been very specific, but it was certainly more than that here. But at the end of the day. AMR does not show when Minnesota other. Requires the board make a different policy. Which is that it would be untenable to allow parties to just make their assertion. And substantiator. I think that's a reasonable policy choice. And you're up. How does the order restore the status quo, anti or do whatever? What should have been done? And the law not been broke. Well, as to accommodation. The claims were waived. So the status quo, anti isn't to make the buffer a delay that could have been avoiding by avoided by a time with confidentiality claim and then make a bargain of accommodation square one all this time later. But AMRC could not restore the status quo, anti a wave could have made it earlier. It just is. Had they dealt the union properly. Surely result would not be that the material would be turned over without any limitation. Had they made their claim properly and to be clear, part of making a claim properly would be proposing accommodation. One could say, for example, we really believe this is confidential. Here's why. And here's a confidentiality agreement or an agreement. That is something that could have been done at the time, but unfortunately it wasn't. And that's the employer not meeting the burden of substantiating a claim. Given that it wasn't done. Why is. Allowing the union to publicize the data, at least the data. Anything more than punitive. Well, it's not punitive. This is relevant information that it's entitled to and the employer. It's entitled to, but not that the world isn't. Right, but confidentiality found here at any point. I mean, I still haven't found. Confidentiality, so for all we know, the world isn't. That's a problem. Employer had to prove. We don't get. We don't normally restrict him. I assume you tell me that the board normally restricts all information requests to just go to the union or can they go to the world? I mean, you can turn him over to the world. Absent restriction or doesn't automatically restrict. So if it hasn't been proven to be confidential. Right, and it hasn't. And I still see nothing in the record where they talk about. They say, well, we might have to do under state law. Nothing in the record where they talk about call. Response times as to. Yeah, I think there's no call volume. I'm sorry. Call volume as the state law. They talk about call response times, which I don't. Call volume at the state law. I do is say, well, turn it over to customers. Some employees might have to do it. Might or might not have to do it under state law. And so the board says, I don't think that's enough to establish confidentiality, even if it's belatedly asserted. Even if I assume it was properly asserted at the hearing. That's right. And it wasn't. So why would there be any restrictions on disclosure without a finding of confidentiality? Well, I apologize if I misunderstood the hypothetical. I thought the question was. If the employer. Presented and substantiated its claim a time and way. People have to prove confidentiality in court all the time. And if they haven't proved it, then the remedy doesn't include any protections for that information. They didn't preserve. They didn't prove it, but they also didn't. But even if we assume they preserved it. They didn't prove it. There's no. Now, if someone thinks we're confused as to whether the board decided that or they actually decided that enough, then you can remand for a more specific determination of whether this was proven to be confidential. So we don't. But I don't think it was sufficient and the board said, and we agree. Right, and the board said the claim wasn't served. It also said it wasn't established, right? My point is not that  It was that if the union. Pardon me, the player had responded correctly to the union. It would have clearly turned over the information because it wasn't really confidential. Subject to some limitation because the union had no interest in disseminating it anyway and would readily have agreed not to do that. And if you're if you're on our knees by responding correctly, that would either be you don't have a confidentiality claim. Responsive information or we do have a confidentiality claim and we're substantiating it, improving it. Either way, unfortunately, it's not what happened. Mr. Ward, did the union here ask for any clarifications about the initial claim that the information was proprietary? I don't know that they were required to. I'm not sure they did. They clearly explained time and time again. Some sort of general idea about good, safe bargaining, right where where you want to have a. You said this is a reasonable policy choice, but what about the policy? I mean, the parties here are going back and forth on these information requests. I mean, if here the union had asked AMR for some clarification and then that clarification came in response to the union's request. Would would that be sufficient? Possible. So then. So I mean, it's just it's not clear to me that the precedent suggests that you know an employer has to put forth, especially where there are multiple defenses. They're saying it's not relevant. They're saying it's proprietary. Like at that stage, how much information do they have to provide? Right, and if the union doesn't ask for any clarification, maybe it was obvious to them why it was proprietary. Maybe they were just focused on relevance. I mean, I don't I don't know. But but isn't there some idea that the parties are supposed to to try to work this out? Well, yes, but it's the employer's burden to get the ball rolling. And as this court said in US testing, that's not an unfair burden. It's the employer who best knows. Well, they get the ball rolling by saying it's a it's a trade secret and nothing else. And here they say it's proprietary and nothing else. I mean, that seems seems very similar to me. I don't know that it's similar when viewed in context because trade secret is more specific than proprietary, which as discussed this morning, it's much broader. It just means ownership. It doesn't mean trade secret means the secret in the context of an industry where they have a highly technological manufacturing process. And in any event, nothing in that decision says, go ahead, just make fair assertion. The ultimate court says, let's do it later. Like this court found something crystallized about the basis for the trade secret claim before the hearing. That didn't happen. And I think it is fair. Maybe not happen because the union didn't ask for any clarification. The union was obligated to ask for a clarification in order for the union to be able to respond to the clarification. The employer at least has to make more than a fair assertion. Does the board's rule then just sort of promote more litigation rather than accommodation between the parties? No, my opponent's suggestion creates more litigation than the court noted because you want to encourage timely making and substantiation of claims and proposing an accommodation. What we don't know is if the parties could work it out, the employer could have explained his claim and then the parties could have potentially worked it out short of litigation. We'll never know. And in this case, in fact, Council Member Amar said there was dialogue going back and forth this whole time and yet three separate times all the employer said was proprietary. That's right. Three separate times gave that single adjective response even though there was, we don't know, but we know there was communication. We know about the one phone call but as Amar says, there was stuff going on back and forth between these three times. That's right. That's all they ever said was proprietary and it's consistent with settled law that such a bare assertion is insufficient to acquire a response. That's not unreasonable. The employer is the best position to get the ball rolling and precedent supports that. Thank you very much. Thank you. Summers, we'll give you, oh, we went right past you, but we'll give you two minutes. Speaking first of the question of the waiver, I think that my opposing... The 2303 waiver. 2303, correct. The arguments made by opposing counsel only serve to illustrate that there was an analysis here that the National Labor Relations Board needed to conduct. There are arguments about, well, it couldn't possibly be a waiver because there's another provision of the contract, et cetera. All of that is a legitimate analysis that should have been conducted by the National Labor Relations Board but was not. Were your briefs to the board explicit about your textual reading of 2303? I believe that they were. I think you referred to it. I referred to it. It hadn't been, but I wanted to make sure. Sure. So I believe we speak to being able to construe the waiver on its face, which I think is a textual argument. And then covering information requests, remember that there's the two ways, covering information requests to see any or all related to language or the second approach, which is... Yes, it may not matter. The ADT... Take it off the table thing. Yes. And I think both the textual any and all language is included in both our principal brief and probably also our reply brief and also the take it off the table, which is the ADT argument, I am certain is represented. It's not in the JA, correct? I'm sorry? Your, based on what you raised is distinctly for the board, for the ALJ. It's not in the JA here? The joint appendix? I believe it's in the brief that went to the board. I also believe you'll see evidence of that in the joint appendix here. I don't think that includes the brief. Typically it would not. It does. There is testimony and that disaster letter that was provided to the union in March. They were both explicitly discussed before the administrative law judge and you'll see the judge and the board grappling with it. So I know it was addressed in our brief below. And I see my time is about to expire, but very briefly on confidentiality and accommodative bargaining. I think the question here that the court has to grapple with is why would a remedial order of accommodative bargaining exist if not for the board to impose it so that they could restore the status quo any in a case like this? If it were always the case that it was either confidential information and therefore didn't need to be provided because it was privileged in some way, there would be no need for an accommodative order. If the parties had already engaged in accommodative bargaining, there'd be no need for a remedy whereby accommodative bargaining would be imposed. That may not be true. It might be thin and it might be at loggerheads because they might really just profoundly disagree about whether it is confidential or not. And so the union is like, you know, the employer does its job and the union says, no, we think we're entitled to that. We don't agree that it's privileged. And so when it gets to the board and the board says, sorry, union, but this is in fact privileged, that's a perfect situation for them saying, so now that that's what you really were fighting about is off the table, they'll have some serious accommodative bargaining. That's got to be routine. But certainly it is also routine as demonstrated by the case law that in circumstances very similar to this where there is an, quote unquote, according to the board, untimely assertion, accommodative bargaining is the proper restoration. I said that you didn't have it. You told me it wasn't a single case where put aside timeless or not assertion. There's not a single case where the board has found back at what you didn't, you didn't prove confidentiality, even at the hearing where the judge found it and the board agreed specifically. It didn't prove it at the hearing either on the merit that they've ordered accommodative bargaining. That's maybe the first case. But I think I do believe that our brief challenge is the concept that the information is not confidential so as to render accommodative bargaining appropriate. So I think that we do challenge. I didn't see the clear error. A specific argument they clearly erred this was confidential and the testimony is. Yeah, I think that's because the clear on that it's hard to find clear. I think that's because the analysis of the judge and the board were so wrapped up in the not just looking at the question of the confidentiality but the too little too late approach sort of thing. They definitely broke it out. I mean text was a sentence that says even if, even if this is not enough, that's the answer. Even if it wasn't shown at the hearing and the board says we agree with the AOJ on that. So it's not, it's not wrapped up together. They talked about them both we do that too. Here's one reason for ruling and even if here's another reason for ruling. You said it 37 who agrees that they've applied and unduly strict standard. Yes, I've been making that finding. Yes, I agree. For all the reasons we've discussed today it is the contention of the employer that the petition for review should be granted. The cross application for enforcement should be denied and that the board supporter should be decision that ever should be vacated or demanded by the court. And I thank you all for your time today. Thank you. The case is submitted.
judges: Millett, Rao, Ginsburg